UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                               :

JOSEPH ROSA,
                               :      15cv1665

             Plaintiff,           :

                               :      <u>MEMORANDUM & ORDER</u>

          -against-

                               :

TCC COMMUNICATIONS, INC., *et al.*,
                               :

             Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        At bottom, this is breach of contract action involving the all-too-familiar scenario in which a plaintiff invokes a blunderbuss of claims against defendants. Rather than resolving this diversity-jurisdiction dispute, Defendants launched a multi-faceted motion to dismiss. The parties agreed to stay discovery, and devoted themselves to briefing myriad questions of law. So now, 10 months after the litigation commenced, this Court winnows the claims, hits the reset button, and directs that discovery proceed forthwith.

        Plaintiff Joseph Rosa sues Defendants TCC Communications, Inc. ("TCCC"); TCC Wireless, LLC[1] ("TCC Wireless"); and TCC Holdco, Inc. ("Holdco") (collectively, the "Corporate Defendants"), along with individuals Shaher Ismail and Javed Malik for: breach of contract; unjust enrichment; fraud; breach of the covenant of good faith and fair dealing (against the individual defendants); tortious interference (against the individual defendants); violation of New York Labor Law ("NYLL") § 190 <u>et seq</u>.; and an accounting. Defendants TCCC and Ismail move to dismiss the fraud, breach of the covenant of good faith and fair dealing, tortious interference, and NYLL claims pursuant to Fed. R. Civ. P. 12(b)(6), and to

---

[1]     The Second Amended Complaint mistakenly identifies this entity as TCC Wireless, Inc. (TCC Wireless Opp'n at 1 n.1)

strike Rosa's punitive damages and attorney's fees requests.  Defendants Wireless, Holdco and Malik move to dismiss all claims against them.  Holdco also seeks dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Lastly, TCCC and Ismail move pursuant to Rule 36(b) to withdraw an admission made in response to Plaintiff's Request for Admissions.

For the following reasons, Defendants' motions to dismiss are granted in part and denied in part.  TCCC and Ismail's request to withdraw their admission is denied.

BACKGROUND

The following facts are gleaned from the Second Amended Complaint ("SAC") (ECF. No. 26) and presumed to be true for purposes of this motion.  Rosa was a sales representative working with Ismail and Malik[2] from 2003 until 2014.  During that time, Rosa was also a Regional Sales Director of Union Telecard Alliance ("UTA"), which provided proprietary phone products distributed by TCCC.  In late 2009, TCCC's relationship with UTA deteriorated, and Ismail sought to become a T-Mobile Preferred Retailer.  T-Mobile approved TCCC's proposal only after Rosa—who had significant experience working with the Latino community in the cellphone business—was identified as the Chief Operating Officer and Executive Manager of TCCC.  TCCC's "gross profits" increased by about $30–40 million.

Ismail offered, and Rosa accepted, a partnership share in TCCC's expanding retail store business.  Their understanding was memorialized in a March 2011 "Partnership Agreement" granting Rosa a 25% interest in all T-Mobile stores expanding into the Northeast.  (SAC Ex. 1.)  The agreement was executed by Ismail (on behalf of TCCC and himself) and Rosa.  Ismail brought Defendant Malik in to oversee daily operations, and in late 2012 gave

---

[2]     Ismail was the President of both TCCC and TCC Wireless, and a corporate officer of Holdco. (SAC ¶ 5.)  Malik was a corporate officer of TCCC, TCC Wireless and Holdco. (SAC ¶ 6.)

him an ownership interest in TCCC.  In January 2014, after extensive contract talks, Rosa,

Malik and Ismail drafted a "Subscription Agreement"[3] (SAC Ex. 2.), giving Rosa an equity

interest in the SIM card business, which he had helped to grow.  Ismail and Rosa executed the

Subscription Agreement, and Ismail informed Rosa that Malik had signed the Subscription

Agreement.  Rosa never received a fully executed copy of the Subscription Agreement, but

began receiving a salary, and left his other job to expand the SIM card business.

       In late 2012, Ismail began transferring TCCC's corporate assets to TCC

Wireless, which used the same office, employees, email addresses, financial records, and

comingled banking funds. Leases were switched from TCCC's name to TCC Wireless's.  And

in December 2014, TCC Wireless merged with Holdco.  In 2015, TCC Wireless and/or

Holdco were sold to a third party.  Rosa alleges that Ismail orchestrated these transfers to

circumvent Defendants' financial obligations to him under the Contracts.

       Defendants failed to pay Rosa the proceeds owed under the Contracts,

including $400,000 in Sales Performance Incentive Funds ("Spiffs") and "residuals"

(payments from T-Mobile to a master dealer).  Finally, in January 2015, Rosa was paid

$259,846.33.  He also received a W2 indicating income of $55,250.00 in 2014.  Ismail then

told Rosa that he would receive the balance of the monies due him when the retail store

business was sold.  That sale occurred in January, and resulted in proceeds of approximately

$26 million, but Rosa received nothing.  When Rosa complained, Defendants cut off his email

account, and accused him of theft.

---

[3]     Together, the Partnership Agreement and the Subscription Agreement are referred to herein as the "Contracts."

LEGAL STANDARD

On a motion to dismiss, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).  However, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim.  Iqbal, 556 U.S. at 678 (citation omitted).

DISCUSSION

I.    Fraud Claim

Defendants argue that Rosa's fraud claim must be dismissed because, among other things, the fraud claim merely repackages the breach of contract claims.   Under New York law, "[g]eneral allegations that a defendant entered into a contract with the intent not to perform are insufficient to support a claim to recover damages for fraud."  Gould v. Decolator, 121 A.D.3d 845, 848 (2d Dep't 2014); see also Manas v. VMS Associates, LLC, 53 A.D.3d 451, 453 (1st Dep't 2008) ("A fraud-based cause of action is duplicative of a breach of contract claim when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.") (internal quotations and citation omitted). Accordingly, "parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks

special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v.

Allegheny Energy, Inc., 500 F.3d 171, 183–84 (2d Cir. 2007).

   Rosa's fraud claim does not fall under any of the three exceptions enumerated

in Allegheny Energy.  And to the extent Rosa's allegations are premised on Defendants'

eventual transfer of assets, they are not cognizable as a fraud claim, which covers only

misrepresentations of present fact, rather than promissory statements of future performance.

See Allegheny Energy, 500 F.3d at 184; New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308,

318, 662 N.E.2d 763 (1995) (holding that where "the complaint does not state the specific

promises or omissions of material facts allegedly made by [defendants] . . . it alleges nothing

more than a breach of the contract and any covenants implied; it does not allege a cause of

action for fraud.").[4]  Accordingly, Rosa fails to state a common-law fraud claim.

   The core of Rosa's fraud-based allegations seems to implicate a claim for

fraudulent conveyance.  See, e.g., SAC ¶ 112 ("Defendants intended to defraud plaintiff when

they transferred TCC[C's] retail store assets to TCC Wireless, which merged with a newly-

created company, TCC Holdco, and was sold to a third party.")  Under New York Debtor and

Creditor Law § 276, "[e]very conveyance made and every obligation incurred with actual

---

[4] Rosa identifies the following statements by Ismail (and arguably the Corporate Defendants, to the extent Ismail was speaking on their behalf) in the Second Amended Complaint which underlie the fraud claim:

- "Ismail offered plaintiff a partnership in TCC[C]'s expanding retail store business." (SAC ¶ 32)
- Ismail "agreed, among other things, to share a 25% interest in all the T-Mobile retail stores that came into existence in the Northeast." (SAC ¶ 33.)
- "Plaintiff was told by defendant Ismail that because he had an equity interest in the business he should leave the day-to-day management of the stores to someone else, and focus on building new business in the Northeast."  (SAC ¶ 37.)
- Ismail "asked plaintiff not to discuss his Partnership Agreement with anyone because of 'office politics.'" (SAC ¶ 40.)
- "In response to numerous requests from plaintiff regarding defendants' failure to pay him under the Agreements, defendant Ismail repeatedly told plaintiff that he would be paid once the retail stores were sold." (SAC ¶ 51.)

Rosa identifies no statements by Malik underlying a fraud claim.

intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." "There are three elements to a section 276 claim: (1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud." <u>Fly Shoes s.r.l. v. Bettye Muller Designs Inc.</u>, No. 14-cv-10078 (LLS), 2015 WL 4092392, at *4 (S.D.N.Y. July 6, 2015) (quotation and citation omitted). In order to plead intent, a plaintiff is permitted to rely on circumstantial "badges of fraud" such as "(1) the inadequacy of consideration received, (2) the close relationship between the parties to the transfer, (3) information that the transferor was insolvent by the conveyance, (4) suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened, or (5) the use of fictitious parties." <u>Silverman Partners LP v. Verox Grp.</u>, No. 08-cv-3103 (HB), 2010 WL 2899438, at *6 (S.D.N.Y. July 19, 2010).

Here, Plaintiff has pled that TCCC's income and primary assets were transferred to TCC Wireless (and eventually Holdco), and has pled facts implicating some of the "badges of fraud." However, Defendants may be prejudiced if this Court were to construe Plaintiff's fraud claim as one for fraudulent conveyance without permitting Defendants to evaluate potential arguments for dismissal on the pleadings. Thus, Plaintiff may replead his fraud claim as one for fraudulent conveyance.

    II.    <u>Covenant of Good Faith and Fair Dealing Claim</u>

Defendants argue that Plaintiff's breach of the covenant of good faith and fair dealing claim is redundant in view of the underlying breach of contract claim. "Under New York law, parties to an express contract are bound by an implied duty of good faith." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002) (citation omitted). The

-6-

implied covenant doctrine holds parties to those implied promises "so interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract,'" to effectuate the parties' intent.  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006); see also Don King Prods., Inc. v. Douglas, 742 F. Supp. 741, 767 (S.D.N.Y. 1990) ("The covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement.").  However, "a claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012).

This Court's decision in Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon, No. 11-cv-5459(WHP), 2014 WL 3858469, (S.D.N.Y. July 30, 2014) ("BONY Mellon") provides helpful guidance.  In BONY Mellon, plaintiffs alleged that defendant had "impaired [their] ability to collect on a possible, future judgment" based, in part, on defendants' involvement with a third party's merger that led to a "diminution of . . . available assets."  BONY Mellon, 2014 WL 3858469, at *1, *3.  Despite factual overlap with the underlying breach of contract claim, this Court found that the implied covenant claim was not redundant because it relied on additional facts and sought additional damages.  See BONY Mellon, 2014 WL 3858469, at *3 ("Through the implied covenant claim, Plaintiffs seek compensation for the value of the judgment they would have received [under the contracts] but for the diminution of . . .  available assets . . . .")  Similarly, when read in a favorable light, Rosa's Second Amended Complaint alleges that Ismail and Malik planned to divest TCCC of assets to prevent Rosa from receiving the benefits he reasonably expected to receive under the Contracts.  In other words, since Ismail and Malik knew TCCC

would transfer its assets while negotiating with Rosa, they were not negotiating in good faith. These allegations implicate the "fundamental purpose of these agreements" (i.e., for Rosa to share in the profits of the businesses he contributed to) rather than Defendants' "general right to act on its own interests in a way that may <u>incidentally</u> lessen the other party's anticipated fruits from the contract." <u>BONY Mellon</u>, 2014 WL 3858469, at *5 (emphasis added) (quotations and citations omitted). Accordingly, Rosa has sufficiently pled a breach of the covenant of good faith and fair dealing claim against Ismail with respect to the Partnership Agreement, and against Ismail and Malik with respect to the Subscription Agreement.

III.     Tortious Interference With Business Relations Claim

The tort of interference with existing business relations requires a plaintiff to establish: (1) it had a business relationship with a third party; (2) defendants knew of that relationship and intentionally interfered with it; (3) defendants acted solely out of malice, or used dishonest, unfair, or improper means; (4) defendants' interference caused injury to the relationship or breach of the contract; and (5) defendants' activities were directed at the third party. See <u>Twelve Inches Around Corp. v. Cisco Sys., Inc.</u>, No. 08-cv-6896 (WHP), 2009 WL 928077, at *5 (S.D.N.Y. Mar. 12, 2009) (citing, <u>inter alia</u>, <u>State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada</u>, 374 F.3d 158, 171 (2d Cir. 2004)). Defendants argue that the Second Amended Complaint fails to meet every one of those requirements. Their argument is strongest with respect to the final prong: that Rosa failed to allege that Defendants' wrongful conduct was directed at the relevant third party (here, T-Mobile).

"[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." <u>Carvel Corp. v. Noonan</u>, 3 N.Y.3d 182, 192 (2004); <u>see also</u> <u>Twelve Inches Around</u>, 2009 WL 928077, at *5 ("the defendant's activities must be

-8-

directed at the third party and must convince the third party not to enter into a business relationship."). Here, Rosa sets forth two allegedly wrongful acts by defendants: (1) that Defendants removed access to his business email; and (2) that "defendants accused plaintiff of theft, which accusation has further eroded plaintiff's reputation in the industry." (SAC ¶¶ 86-88.) The first act is clearly not conduct directed at T-Mobile. The second act speaks vaguely of Rosa's industry reputation, without specifying whether Defendants directed those allegations at T-Mobile. But "cursory allegations and conclusions" regarding Defendants' allegedly malicious conduct "are insufficient to state a claim." UPS Store, Inc. v. Hagan, 99 F. Supp. 3d 426, 438 (S.D.N.Y. 2015). There are no allegations that Defendants' conduct convinced T-Mobile not to enter a business relationship with Rosa, or otherwise interfered with a pre-existing relationship independent of Rosa's work with TCCC. Accordingly, Rosa's tortious interference claim is dismissed with prejudice.

IV.    New York Labor Law Claim

        Defendants argue that Plaintiff's NYLL claims fail because the Contracts only contemplate incentive-based compensation schemes, and such compensation falls outside the definition of "wages" in the NYLL. "Wages" are defined, in relevant part, as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." NYLL § 190(1). Under this definition, New York Courts "exclude[] certain forms of incentive compensation that are more in the nature of a profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise." Truelove v. Ne. Capital & Advisory, Inc., 95 N.Y.2d 220, 223–24 (2000). However, even if a contract provides for pay that is "contingent" or "discretionary", contractual wages owed may still fall under the statutory definition of wages so long as the contracts guarantee a base compensation. See

-9-

Wachter v. Kim, 82 A.D.3d 658, 663 (1st Dep't 2011) (holding that plaintiff sufficiently pled a breach of contract and NYLL claim where a contract for "discretionary and/or incentive-based" pay also included a minimum guaranteed amount payable to the plaintiff.)

Here, the Subscription Agreement seems to speak only in terms of a profit-sharing arrangement and would therefore be exempt from the NYLL's definition of "wages" under the New York State Court of Appeals' decision in Truelove.[5]  However, the Partnership Agreement sets forth a convoluted payment structure, requiring Ismail and TCCC to "pay and provide [Rosa] with the following:

> b. A payment of $7,000 per month, on the first of each month, as a draw against my 25% share of the net profits.  In calculating the amount to be paid each month, TCC will multiply the net profits by 25%.  TCC then will subtract 70% of the product and apply that 70% towards any amounts that I may owe as my share of the build out costs.  The remaining 30% will be paid to me as follows.  However, in the event that the 30% equals to less than $7,000, then I shall only be entitled to receive a payment of $7,000.  And if the 30% is greater than $7,000, then I will receive the difference above the $7,000.  Notwithstanding, I will be entitled to 2% of the net profits for the stores located in NY, NJ, CT, PA, DE and FL.  The net profits will exclude any residuals that are paid to TCC Communications or successor unless agreed by Mr. Ismail or majority stock holder and will be done through an addendum to this agreement.  In the event that, after the 1st anniversary of signing this agreement, the projections regarding the expansion of the business of TCC relative to the T-Mobile stores and accounts turn out to be less than projected, you and TCC agree that I will be paid no less than $7,000 per month for a period of no less than 24 months and such payments will be guaranteed by a 10% interest in the stock of TCC (3) thirty days notes only ...

Thus, the Partnership Agreement requires a minimum payment of $7,000 per month, regardless of net profits.  Based on the First Department's decision in Wachter, TCCC and

---

[5]      Section 4 of the Subscription Agreement refers to Rosa's "salary," but the payment schedule therein relates only to percentages of net profits.

Rosa's failure to pay this monthly minimum would appear to state a NYLL claim.[6]
Conversely, to the extent Rosa's claim relies on additional wages owed pursuant to the profit-sharing aspects of the agreement, he will be unable to recover under the NYLL.[7]   Given the Second Amended Complaint's lack of clarity on this issue, Plaintiff's NYLL claim is dismissed without prejudice.

     V.      <u>Breach of the Partnership Agreement</u>

          Neither TCC Wireless nor Holdco were parties to the Partnership Agreement. However, Plaintiff seeks to hold them liable based on language in the Partnership Agreement which holds accountable TCCC's "successors," as well as "resulting businesses or corporations . . . relative to the T-Mobile stores" in the event that "TCC[C] changes form or ownership, or corporate structure."  Partnership Agreement § 2.a.  The Second Amended Complaint does not allege that TCCC changed its form, ownership or corporate structure.

---

[6]    Defendants rely on the New York Court of Appeals' statement that "nothing in the language of [the statute as originally enacted] suggests that it was intended to provide any remedy whatsoever for the successful prosecution of a common-law civil action for contractually due remuneration on behalf of employees who in all other respects are excluded from wage enforcement protection under the recodified article 6 of the Labor Law." <u>Gottlieb v. Kenneth D. Laub & Co.</u>, 82 N.Y.2d 457, 462 (1993).  But as explained in <u>Pachter v. Bernard Hodes Grp., Inc.</u>, 10 N.Y.3d 609, 616 (2008), that statement in <u>Gottlieb</u> "merely pointed out that employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law and, as a result, those individuals are not entitled to statutory attorney's fees under section 198 (1-a) if they assert a successful common-law claim for unpaid wages."  These cases are inapposite because Defendants do not assert that Rosa was excluded from wage enforcement protection.

[7]    As Defendants correctly point out, the Second Amended Complaint is not entirely clear as to whether Rosa received such minimum payments, as it seems undisputed that Plaintiff received some payments under the Contracts. And at oral argument, Plaintiff's counsel indicated that Rosa may have been paid his base salary under the agreements. <u>See, e.g.</u>, Sept 25 Hrng Tr. at 31:8-18 (PLAINTIFF'S COUNSEL: "It is our position that he was, under the agreements, entitled to both a base salary and was paid that way.  They gave him a 1099 and a W-2 in 2015.  They treated him as having two separate components of his compensation package.  There was a 1099 for $259,000, which we believe is part of the profit sharing.  They also gave him a W-2 of $55,000, so it is our position that that $55,000 were his wages."  THE COURT:  Right.  But he received that, didn't he? [PLAINTIFF'S COUNSEL]:  He received that, but that is far from what he believes he was entitled to under the agreements.")

Thus, the relevant issue is whether Rosa has pled that either Holdco or TCC Wireless are

TCCC's "successors."[8]

        Generally, "a business entity's acquisition of assets from another . . .  results in

no successor liability, with four exceptions: (1) the successor corporation expressly or

impliedly assumed the liabilities of its predecessor; (2) there was a consolidation or de facto

merger of the two business entities; (3) the successor is a 'mere continuation' of the

predecessor; or (4) the transaction is entered into fraudulently to escape such obligations."

Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07-cv-489, 2007 WL 3253592, at *2

(S.D.N.Y. Nov. 2, 2007).  Based on the Second Amended Complaint, only the fourth

exception is potentially relevant here.  (See SAC ¶¶ 10–11 (Defendants "fraudulently

transferred defendant TCC[C]'s assets to defendant TCC Wireless" and "subsequently

transferred the retail store assets of defendant TCC Wireless to defendant TCC Holdco.");

SAC ¶ 56 ("Defendant Ismail intended to defraud plaintiff in that he diverted TCC[C] assets,

the retail stores, to TCC Wireless, then to TCC Holdco, and then sold TCC Wireless, TCC

Holdco, or both, to a third party."))

        Courts generally find that the fraudulent transfer exception is met where

Plaintiff has sufficiently pled a fraudulent conveyance claim.  See Silverman Partners LP,

2010 WL 2899438, at *6 ("When a party has alleged facts to show that a fraudulent

conveyance may have taken place, it can be inferred that the transaction was undertaken to

defraud creditors and the second exception for imposing successor liability applies."); A.J.

Heel Stone, L.L.C. v. Evisu Int'l, S.R.L., No. 03-cv-1097 (DAB), 2006 WL 1458292, at *4

---

[8]      Notably, the original draft of the Partnership Agreement appears to have included a provision expressly granting Rosa a 25% interest in "any new or merged entity" arising out of the business, as well as any of TCCC's "assigns."  That language was crossed out, and its removal was initialed by both Ismail and Rosa. (Partnership Agreement at 1.)

(S.D.N.Y. May 25, 2006) (denying a motion to dismiss a successor-liability claim "[b]ecause the Court . . . found that Petitioner has adequately pled fraudulent conveyance.").  As discussed above, Plaintiff's fraud claim seems to implicate fraudulent conveyance.  See, e.g., SAC ¶ 112 ("Defendants intended to defraud plaintiff when they transferred TCCC retail store assets to TCC Wireless, which merged with a newly-created company, TCC Holdco, and was sold to a third party.").  However, Plaintiff's Second Amended Complaint does not clearly allege a claim for fraudulent conveyance or successor liability against TCC Wireless or Holdco.  Accordingly, claims against TCC Wireless and Holdco for breach of the Partnership Agreement are dismissed with leave to replead.

VI.    Breach of the Subscription Agreement

Holdco and TCC Wireless were not parties to the Subscription Agreement. And unlike the Partnership Agreement, the Subscription Agreement contains no language addressing the liability of TCCC's "successors."   Because Plaintiff concedes that he is not attempting to pierce the corporate veil to hold Holdco or TCC Wireless liable,[9] he has failed to set forth any theory of contractual liability for those entities.  Accordingly, the claims against Holdco and TCC Wireless for breach of the Subscription Agreement are dismissed with prejudice.

Malik argues that New York's statute of frauds, General Obligations Law § 5–70, renders the Subscription Agreement unenforceable against him because Plaintiff has not produced a copy signed by Malik.  But this Court need not address the statute of frauds here

---

[9]      See Opp'n Br. at 20 ("Plaintiff does not disregard the separate corporate forms of the TCC Entities"); Sept. 25, 2015 Hr'g Tr. at 26:23-27:8 ("THE COURT: [T]here is no reference to successor liability in the subscription agreement.  What is your theory for liability against Holdco and Wireless under Subscription Agreement? [PLAINTIFF'S COUNSEL]: You're right.  Your Honor, there is no language in the subscription agreement, specifically in the partnership agreement.  Our theory against the other corporate defendants was based upon the fraud that had been perpetrated by all the parties involved.  If the court viewed that as a piercing corporate veil issue, there is not much that I can say about that because we didn't address it.")

because Rosa plausibly alleges that Malik signed the Subscription Agreement. "The fact that neither party can now produce a signed copy of the [contract] . . . does not in itself mean that the contract does not satisfy the statute of frauds. If the [contract] had been signed but was later lost or destroyed, the Agreement would satisfy the statute of frauds and be binding against [defendant]. Whether [defendant] signed the [contract] is a disputed question of fact." Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC, 641 F. Supp. 2d 196, 204 (S.D.N.Y. 2009) (citations omitted). Here, in addition to the fact that Malik is listed as a party to the contract signed by Rosa and Ismail (Subscription Agreement at 2), Rosa alleges that: (1) Malik engaged in extensive contract negotiations regarding the Subscription Agreement (SAC ¶ 62); (2) Ismail represented that Malik had signed the contract (SAC ¶¶ 65-66); and (3) Defendants at least partially performed their duties under the contract following its execution. (SAC ¶ 69.) Accordingly, Malik's motion to dismiss the breach of contract claim is denied.

VII.   Unjust Enrichment Claim

Defendants TCC Wireless, Holdco and Malik move to dismiss Rosa's unjust enrichment claim. As an initial matter, the unjust enrichment claims against TCC Wireless and Holdco must be dismissed because "[t]here can be no quasi-contract claim against a third-party non-signatory to a contract that covers the subject matter of the claim." Randall's Island Aquatic Leisure, LLC v. City of New York, 92 A.D.3d 463, 464 (1st Dep't 2012).

Malik argues that because Ismail and TCCC do not dispute the Subscription Agreement's validity against themselves, the Subscription Agreement is an enforceable contract governing Rosa's breach of contract claims, therefore precluding any quasi-contract claims against Malik. Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi

contract for events arising out of the same subject matter." In re First Cent. Fin. Corp., 377 F.3d 209, 213 (2d Cir. 2004).  However, where there is a dispute regarding a defendant's obligations under the contract, an unjust enrichment claim may survive a motion to dismiss as an alternative to the breach of contract claim.  See, e.g., Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001).  Here, Malik unequivocally disputes his obligations under the Subscription Agreement, calling it "unenforceable on its face."  (Malik Br. (ECF No. 39) at 5.)  Accordingly, Malik's motion to dismiss the unjust enrichment claim is denied.

VIII.   Accounting Claim

        To state a claim for an accounting under New York law, a plaintiff must establish: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.  IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009).  Defendants Holdco, TCC Wireless, and Malik argue that Plaintiff's complaint fails to satisfy the first two elements of an accounting claim.  With respect to Holdco and TCC Wireless, Plaintiff does not allege any relationship at all, much less one of a mutual and confidential nature. Moreover, with respect to Malik, the only alleged relationship is that they negotiated the Subscription Agreement and worked together.  (SAC ¶¶ 39, 62.)  Such "arm's length business dealings" have been found insufficient to state an accounting claim under New York law.  See KJ Roberts & Co. Inc. v. MDC Partners Inc., No. 12-cv-5779 (LGS), 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014) ("Under New York law, a 'confidential relationship' in this context refers to a relationship which induced plaintiff to entrust defendant with property or money. Plaintiff has not produced any evidence suggesting that it entrusted Defendant with

property or money or that its relationship with Defendant consisted of anything other than arm's length business dealings.") (quotations and citations omitted), aff'd, 605 F. App'x 6 (2d Cir. 2015). Lastly, to the extent Rosa seeks an accounting to calculate his damages, he "can make use of familiar discovery devices to obtain any information [he] needs to establish [his] allegations as to damages." Addax BV Geneva Branch v. E. of New Jersey, Inc., No. 05-cv-9139 (JSR), 2007 WL 1321027, at *2 (S.D.N.Y. May 4, 2007) (quotation, citation and alterations omitted)   Accordingly, the accounting claim is dismissed with prejudice as to Defendants Holdco, TCC Wireless, and Malik.

IX.    Motion to Strike Punitive Damages & Attorney's Fees

Defendants seek to strike Plaintiff's demands for punitive damages and attorney's fees pursuant to Rule 12(f), which states that "the court may strike from a pleading an insufficient defense or any redundant immaterial, impertinent, or scandalous matter." "Under New York law, the elements of a punitive damages claim based on a breach of contract action are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be . . . egregious [in] nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) the conduct must be part of a pattern directed at the public generally." M'Baye v. World Boxing Ass'n, No. 05-cv-9581 (DC), 2007 WL 844552, at *5 (S.D.N.Y. Mar. 21, 2007). Plaintiff will clearly not be able to satisfy the fourth element, as there are no allegations of conduct directed at the public generally. Accordingly, Defendants' motion to strike Plaintiff's punitive damages request is granted. See M'Baye, 2007 WL 844552, at *5; Nash v. Coram Healthcare Corp., No. 96-cv-0298 (LMM), 1996 WL 363166, at *4 (S.D.N.Y. June 28, 1996). This Court declines to strike Plaintiff's request for attorney's fees at this time.

-16-

X.      Personal Jurisdiction Over Holdco

While all of the claims against Holdco have been dismissed, some with prejudice and some without, this Court nevertheless addresses the issue of personal jurisdiction in the event Plaintiff elects to replead.

Holdco, a Delaware Corporation with a principal place of business in Illinois, argues that this Court lacks personal jurisdiction over it.  Regarding general jurisdiction, Holdco points to the Supreme Court's recent decision in Daimler AG v. Bauman, 134 S. Ct. 746, 761–62 (2014), which held that a foreign corporation may be subject to general jurisdiction in a state only where its contacts are so "continuous and systematic," judged against the corporation's national and global activities, that it is "essentially at home" in that state. See also Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) ("We conclude that applying . . . Daimler, the district court may not properly exercise general personal jurisdiction over the Bank. Just like the defendant in Daimler, the nonparty Bank here has branch offices in the forum, but is incorporated and headquartered elsewhere. Further, this is clearly not 'an exceptional case' where the Bank's contacts are 'so continuous and systematic as to render [it] essentially at home in the forum.'").  Under this standard, the Second Amended Complaint lacks sufficient allegations to establish general jurisdiction.

Holdco also argues that this Court lacks long-arm jurisdiction.  However, it is worth noting that CPLR § 302(a)(3)(ii) provides for personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state," if the defendant regularly does or solicits business within the state, derives substantial revenue from goods used or consumed or services rendered in the state, or reasonably expects the act to have consequences in the state and derives substantial benefit from interstate or international commerce.  In analyzing long-arm jurisdiction under that

-17-

statute, courts have held that a transferee's potential liability under fraudulent conveyance is sufficient to establish a "tortious act without the state." <u>Sunrise Indus. Joint Venture v. Ditric Optics, Inc.</u>, 873 F. Supp. 765, 770 (E.D.N.Y. 1995). As discussed above, however, a fraudulent conveyance claim is not pled in the Second Amended Complaint. Moreover, there are no allegations that Holdco regularly does or solicits business within the state, derives substantial revenue from goods used or consumed or services rendered in the state, or derives substantial benefit from interstate or international commerce.

XI. <u>Motion to Withdraw Admission</u>

In their response to Rosa's First Set of Requests for Admission, Ismail and TCCC admitted "that Mr. Malik signed a copy of the Subscription Agreement." (ECF No. 40-1 at 7.) They seek to withdraw that admission.

Under Fed. R. Civ. P. 36(b), matters admitted are considered "conclusively established unless the court, on motion, merits the admission to be withdrawn or amended." "[T]he decision to excuse the defendant from its admissions is in the court's discretion," <u>Donovan v. Carls Drug Co.</u>, 703 F.2d 650, 651–52 (2d Cir. 1983), but a court may permit a party to withdraw an admission "if it would promote the presentation of the merits of the action <u>and</u> if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b) (emphasis added).

Here, Ismail and TCCC assert that their admission was inadvertent, and that withdrawal would subserve the presentation of this case because the admission relates to a core issue (<u>i.e.</u> whether Malik signed the Subscription Agreement). While this Court is sympathetic to the argument that permitting an inadvertent admission by one defendant to adversely affect another defendant seems unfair, Rule 36(b) only permits withdrawal if it would promote the merits of the action. But Ismail's admission does not preclude Malik from

denying that he signed the Subscription Agreement.  All that has been "conclusively established" is that Ismail and TCCC have admitted that Malik signed the contract. Moreover, this Court is persuaded that withdrawal would prejudice Rosa.  Accordingly, Ismail and TCCC's motion to withdraw their admission is denied.

CONCLUSION

For the foregoing reasons, Rosa's common-law fraud and tortious interference claims are dismissed against all Defendants with prejudice.  Further, Rosa's accounting claim against Defendants Malik, TCC Wireless and Holdco is dismissed with prejudice.  His breach of the Subscription Agreement and unjust enrichment claims against TCC Wireless and Holdco are also dismissed with prejudice.  TCCC and Ismail's motion to withdraw their admission pursuant to Fed. R. Civ. P. 36(b) is denied.  Plaintiff's request for punitive damages is stricken.

Within 21 days of this Memorandum & Order, Plaintiff may file a Third Amended Complaint pleading claims for fraudulent conveyance and successor liability for TCC Wireless and Holdco (with respect to the Partnership Agreement).  Plaintiff may not replead a New York Labor Law claim to the extent Plaintiff is seeking discretionary and/or incentive-based pay allegedly owed under the Contracts.  Moreover, any amended complaint should make specific allegations regarding this Court's personal jurisdiction over Holdco.

Counsel are directed to submit a proposed discovery schedule for this Court's consideration, including a date for submission of a joint pretrial order, within 28 days of this Order.  Moreover, this Court encourages the parties to consider a settlement conference with the magistrate judge or mediation through the Southern District's Mediation Program.  Any such request can be made jointly by the parties in a single-sentence letter to this Court.

The Clerk of Court is directed to terminate all pending motions.

Dated: January 5, 2016
          New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record via ECF.*