UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH ROSA,

    *Plaintiff*,

- against -

TCC COMMUNICATIONS, INC., *et al.*

    *Defendants*.

Case No. 15-CV-1665 (WHP)

# REPLY MEMORANDUM OF LAW OF DEFENDANT
# TCC WIRELESS, LLC IN SUPPORT OF ITS MOTION
# TO DISMISS THE THIRD AMENDED COMPLAINT

'

SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue
New York, New York 10169-0079
Tel: (212) 818-9200
Fax: (212) 818-9606

*Attorneys for Defendant TCC Wireless, LLC.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1
ARGUMENT ..................................................................................................................................2
I.      The Fraudulent Conveyance Claim Should Be Dismissed ..................................................2
          A.      Plaintiff Has Failed to Demonstrate Wireless Participated in the Alleged Conveyances ...............................................................................................................4
          B.      Plaintiff Has Failed to Allege Any Fraudulent Intent on the Part of Wireless ........5
          C.      Plaintiff Has Failed to Demonstrate the Alleged Conveyances Impaired His Ability to Collect Debts from TCCC or Ismail.........................................................7
          D.      Plaintiff Cannot Establish Fraudulent Intent Based on Wireless's Denial of Successor Liability....................................................................................................8
II.     The Breach of Contract Claim, Premised on Allegations of Successor Liability, Should be Dismissed..........................................................................................................................9
III.    The New York Labor Law Claim Should be Dismissed ....................................................9
CONCLUSION.............................................................................................................................10

2493022_4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Old CarCo LLC*,
   435 B.R. 169 (Bankr. S.D.N.Y. 2010) ...................................................................................7

*In re Sharp Int'l Corp.*,
   281 B.R. 506 (Bankr. E.D.N.Y. 2002), *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003),
   *aff'd*, 403 F.3d 43 (2d Cir. 2005) ............................................................................................5

*Orr v. Kinderhill Corp.*,
   991 F.2d 31 (2d Cir. 1993) ......................................................................................................7

*Sullivan v. Kodsi*,
   373 F. Supp. 2d 302 (S.D.N.Y. 2005) .....................................................................................6

**Statutes**

Federal Rule of Civil Procedure 9(b) .............................................................................................6

New York Debtor and Creditor Law § 276 ................................................................................2, 6

New York Labor Law § 190 ............................................................................................................9

Defendant TCC Wireless, LLC ("Wireless"), wrongly named herein as TCC Wireless, Inc., respectfully submits this Reply Memorandum of Law in Support of its Motion to Dismiss the Third Amended Complaint. Wireless also relies on and incorporates by reference the legal arguments set forth in the Reply Memorandum of Law submitted by Defendants TCC Holdco, Inc. and Javed Malik, dated June 3, 2016 ("Holdco and Malik Reply Memorandum"). Wireless seeks the dismissal of the First, Fourth, and Sixth Causes of Action, to the extent they are asserted against Wireless, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's Memorandum in Opposition to this motion to dismiss the Third Amended Complaint ("TAC") is the clearest, most reasoned attempt to date at articulating his basis for a fraudulent conveyance theory that would support an independent claim against Wireless or that would support a claim that Wireless can be bound to the Partnership Agreement at issue in this case as a successor. But the clarity only works against Plaintiff here. When the boilerplate, conclusory bluster is put aside, and the factual allegations are the focus, it is beyond cavil that Wireless simply does not belong in this dispute.

In sum, Plaintiff now asserts that "retail store assets" belonging to defendants TCC Communications, Inc. ("TCCC") were transferred to Wireless and/or Holdco for inadequate consideration. In making that claim, Plaintiff asks the Court to disregard the undisputed fact that Wireless subsequently was sold to a third party for $26 million. Plaintiff says that sale is "patently beside the point" or "completely beside the point" (Plaintiff's Mem. of Law in Opp. to Wireless, Holdco, and Malik's Motions to Dismiss the Third Amended Compl. ("Opp. Mem.") 6, 11, ECF No. 82). Since when is $26 million beside the point? On the whole, Plaintiff is

1

alleging that TCCC and Defendant Ismail moved "retail store assets" to Wireless and/or Holdco between 2012-2014 and then sold Wireless and/or Holdco for $26 million in 2015. Had TCCC simply sold retail store assets to a third party for $26 million, there would clearly be no possible claim for a fraudulent conveyance. Plaintiff could bring any claim that he owned a portion of the assets against TCCC, Ismail, and whoever else received the money. There would be no claim against the innocent third party purchaser who paid $26 million for the assets. The alleged interim step of moving assets to Wireless and/or Holdco prior to the sale to a third party should not – and indeed, does not – alter the result.

Accordingly, there is nothing here to support a claim that Wireless acted to deprive Plaintiff of recourse to any assets or, much less, that it did so with "actual intent to defraud." As Plaintiff has failed on this latest opportunity to articulate a viable claim against Wireless with the requisite particularity under the Federal Rules of Civil Procedure, Wireless moves to dismiss with prejudice the First, Fourth, and Sixth Causes of Action in the Third Amended Complaint as against it and, as a result, to dismiss Wireless as a defendant in this matter.

## ARGUMENT

### I. The Fraudulent Conveyance Claim Should Be Dismissed

There is no disagreement here regarding the legal standards on a motion to dismiss or the elements of a claim under Section 276 of the New York Debtor and Creditor Law ("NYDCL"). Plaintiff's Memorandum in Opposition to the instant motion seems to assume that this Court viewed the Second Amended Complaint as setting forth a fraudulent conveyance claim and simply required that the pleading be formalized by Plaintiff. Wireless reads the Court's opinion differently, seeing it as putting Plaintiff to the test of actually setting forth a valid claim for fraudulent conveyance, but of course only the Court knows exactly what it meant.

In the end and taken as a whole, the TAC does not state facts from which a cognizable cause of action for fraudulent conveyance could be sustained against Wireless. The fundamental dispute on this motion concerns Plaintiff's allegations of fact, as asserted and assuming they are true (which they are not). Wireless contends that a holistic review of the facts alleged by Plaintiff demonstrates that no fraudulent conveyance claim has been stated as to Wireless.

Indeed, very little is said about Wireless in the TAC. Other than the introduction and jurisdiction sections, Wireless is not even mentioned until Paragraph 47, where Plaintiff alleges that "[i]n or about the end of 2012, or the beginning of 2013" (TAC ¶ 46), "Ismail began to divest TCC Communications of its corporate assets and transferred them to TCC Wireless" (TAC ¶ 47). Plaintiff adds allegations that TCCC and Wireless shared an office, employees, email addresses, and banking funds, and that TCCC was involved in Wireless leasing space for stores (TAC ¶¶ 48-49, 51). No specifics are given and the allegations are inconsistent. For example, one paragraph after alleging that TCCC and Wireless "commingled" banking funds, the TAC specifically alleges that Ismail diverted TCCC income by setting up "a different bank account set up for TCC Wireless" (TAC ¶¶ 49-50). Plaintiff would have the Court believe that the banking funds were <u>both</u> commingled and purposefully separated, both times with the actual intent to defraud.

From there, Plaintiff alleges that in December 2014 – or about two years <u>after</u> the purported transfer of assets to Wireless – that company was merged into Holdco and "was then sold to a third party in January 2015" (TAC ¶ 52). Plaintiff alleges that the primary assets of Wireless and Holdco were the retail stores (TAC ¶ 53). Plaintiff further alleges that he made "numerous requests . . . regarding defendants' failure to pay him under the Agreements, [and] defendant Ismail repeatedly told plaintiff that he would be paid once the retail stores were sold"

3

(TAC ¶ 56) and that "Plaintiff reasonably relied on defendant Ismail's statements regarding his compensation under the Agreement" (TAC ¶ 59). Accordingly, Plaintiff's own allegations make it clear that he knew the stores were being sold in advance of it happening and simply expected Ismail to pay him his "share" pursuant to the Partnership Agreement, whatever that might be. Ultimately, according to the TAC, "the retail store business was sold in or about January 2015, for approximately $26 million, and defendants failed to pay plaintiff his share of the proceeds" (TAC ¶ 86). Notably, there is no allegation that the intermediary transfer of any assets to Wireless or Holdco prior to the sale of the retail stores impaired or prevented Plaintiff from collecting his share of the proceeds from Ismail. Rather, Plaintiff alleges that it was defendant Ismail – who is alleged to have repeatedly told Plaintiff he would be paid once the retail stores were sold, diverted the stores from TCCC to Wireless and Holdco, initiated the sale, and presumably received all proceeds from the sale – who failed to render to Plaintiff his allegedly promised share (*see* TAC ¶¶ 56, 58).

For the reasons discussed below and in the Holdco and Malik Reply Memorandum, these allegations are not sufficient to state a claim for fraudulent conveyance against Wireless.

A. **Plaintiff Has Failed to Demonstrate Wireless Participated in the Alleged Conveyances**

First, there are no allegations that Wireless participated in the alleged fraudulent transfers (*see* Wireless Opening Mem. in Support of its Motion to Dismiss the Third Amended Compl. ("Wireless Mem.") 6-7, ECF No. 79). Plaintiff's opposition papers do not refute that the TAC identifies only Ismail as having participated in the alleged conveyances with specific intent to defraud Plaintiff. *See* TAC ¶ 58. If anything, the TAC suggests that Wireless was a passive conduit that was given assets by TCCC and then sold for $26 million, none of which was received by Wireless. If there is a fraudulent conveyance claim in here somewhere, it does not

4

arise against Wireless. Plaintiff makes little attempt to rebut this argument – indeed, he states the "argument hardly warrants a response" – other than asserting that "companies operate through the actions of individual human beings" (Opp. Mem. 15). However, Plaintiff's current attempt to hold Wireless – now a limited liability company in which Ismail has zero ownership interest – liable to Plaintiff for the allegedly fraudulent acts of a former principal is an improper reinstatement of a corporate veil-piercing argument. It is submitted that Plaintiff emphatically dropped this theory of liability on the prior motion to dismiss the Second Amended Complaint. (*See* Memorandum and Order ("Order") 13, Jan. 5, 2016, ECF No. 52.) Because Plaintiff has failed to sufficiently allege the nature of Wireless's participation in the alleged fraud against him (*see* Wireless Mem. 8), Plaintiff's claim against Wireless for fraudulent conveyance should be dismissed.

B. **Plaintiff Has Failed to Allege Any Fraudulent Intent on the Part of Wireless**

Second, there are no allegations of any fraudulent intent on the part of Wireless. (*See* Wireless Mem. 7-11.) Plaintiff alleges that "Defendant Ismail intended to defraud plaintiff in that he diverted TCC Communications assets, the retail stores, to TCC Wireless, then to TCC Holdco, and then sold TCC Wireless, TCC Holdco, or both, to a third party" (TAC ¶ 58). Notably, Plaintiff does not allege that Wireless, or its new owners, had any intent whatsoever to defraud him, except to the extent the TAC parrots the elements of a fraudulent conveyance claim – without factual support – in Paragraphs 110-116.[1]

---

[1] Absent alleged participation in the fraudulent conveyance, there can be no claim against Wireless. *See In re Sharp Int'l Corp.*, 281 B.R. 506, 522-23 (Bankr. E.D.N.Y. 2002), *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005) ("A transferee's acceptance of a payment, even with knowledge that the funds were obtained by fraudulent means, does not give rise to a claim of fraudulent conveyance if the transferee did not participate in the fraud.")

5

At its core, the TAC, even as explained by Plaintiff in his opposition papers, alleges that the retail stores were sold by TCCC for $26 million. Plaintiff now says that this very substantial sale price is "patently" or "completely beside the point" (Opp. Mem. 6, 11), but that cannot be the case. To the contrary, at its core, the transaction in dispute here is the sale of retail stores to a third party for $26 million. The alleged transfers to Wireless and Holdco are nothing more than intermediate steps and any corporate restructuring in that regard – if, indeed, it occurred – is itself "beside the point."

There is no allegation that Wireless or Holdco got anything out of these transactions. Indeed, the TAC repeatedly states that they were purchased by a "third party" (TAC ¶ 52). There is no allegation that Wireless or Holdco received any portion of the $26 million or have any ongoing benefit from the purported fraudulent conveyances. As indicated in Wireless' opening papers, Rule 9(b) requires particularized allegations on a fraudulent conveyance claim with respect to each of multiple defendants. *See, e.g., Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (claim under NYDCL §276 "must be plead with particularity as to each and every defendant"). But there is nothing here to suggest fraudulent intent on the part of Wireless.

Accordingly, Plaintiff relies heavily on the purported "badges of fraud" (Opp. Mem. 9-13), but such badges only exist – even arguably – if the ultimate transaction is simply ignored in its entirety. Thus, the consideration is only "inadequate" if eyes are shut with respect to the $26 million ultimately paid. There is no "close relationship" alleged between any defendant and the third party purchaser of Wireless and the stores. There is no allegation that TCCC was rendered "insolvent" by the transaction. The timing is hardly suspicious – according to the TAC, the chain of events from transfer of assets through sale took almost two years to complete, and it appears Plaintiff knew about the sale at the time. In fact, Plaintiff alleges that these acts were

6

part of "[D]efendants' long-term goal to build the retail store business[] and then sell it to a third party" (TAC ¶ 57). There is no allegation anywhere regarding fictitious names. Thus, not one badge of fraud is implicated by the alleged transaction here.

Lacking any allegation – particularized or otherwise – suggesting any fraudulent intent on the part of Wireless or any badge of fraud with respect to the transaction as a whole, the TAC fails to sustain a cause of action for fraudulent conveyance as to Wireless. Plaintiff does not dispute that a fraudulent conveyance claim must be assessed with an analysis of the overall transaction and whether fair value was ultimately received. *See, e.g., Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) ("an allegedly fraudulent conveyance must be evaluated in context"; "where a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications") (citations omitted) (internal quotation marks omitted); *In re Old CarCo LLC*, 435 B.R. 169, 187 (Bankr. S.D.N.Y. 2010) ("The Court concludes that the Complaint fails to state a claim [for constructive or intentional fraudulent transfer] because it does not include, or even reference, the significant value received by [debtor] pursuant to the overall transaction."). That simple analysis disarms any claim against Wireless here.

> C. **Plaintiff Has Failed to Demonstrate the Alleged Conveyances Impaired His Ability to Collect Debts from TCCC or Ismail**

Third, even if Plaintiff could allege badges of fraud or otherwise set forth a particularized allegation of fraudulent intent on the part of Wireless, he has not sufficiently established the alleged transfers hindered, delayed, or otherwise impaired him in the pursuit of proceeds allegedly owed to him under any purported agreement. (*See* Wireless Mem. 11-14). Plaintiff responds that "proceeds of that sale were not properly received by Rosa because the retail stores were fraudulently diverted from TCCC . . . to TCC Wireless and TCC Holdco *before* being sold" (Opp. Mem. 11). However, Plaintiff has alleged no facts establishing that these intermediary

7

transfers of assets, even if fraudulent or characterized by badges of fraud, at all diminished his ability to collect his share of the proceeds from Ismail or TCCC. The viability of Plaintiff's claim against Ismail or TCCC for his alleged share of the $26 million under the Partnership Agreement is unaffected by whether Ismail, as alleged, first transferred the retail stores to TCCC affiliates for the purpose of corporate restructuring or had instead sold the retail stores directly to a third party. Because Plaintiff has yet again failed to demonstrate how the alleged intermediary transfers furthered any fraud allegedly perpetuated on him (*see* Wireless Mem. 7) or hindered Plaintiff's present ability to recover sale proceeds from TCCC or Ismail, his fraudulent conveyance claim must be dismissed.

### D. Plaintiff Cannot Establish Fraudulent Intent Based on Wireless's Denial of Successor Liability

Fourth, Plaintiff attempts to establish Wireless's liability for fraudulent conveyance by putting the proverbial before the horse. Plaintiff asserts that despite the sale of the retail stores being specifically contemplated by the Partnership Agreement that he negotiated and signed, because Plaintiff could not have anticipated that Wireless and Holdco would "refuse to acknowledge that they were successors to TCCC obligated to Rosa pursuant to the Partnership Agreement" (Opp. Mem. 14), any conveyances of the stores to Wireless and Holdco are therefore rendered fraudulent. However, such an argument fundamentally inverts the law on successor liability, which states that a successor entity who acquires assets from another is not liable for the obligations of its predecessor until one of the exceptions is established. (*See* Wireless Mem. 15.) Plaintiff cannot be allowed to establish his fraudulent conveyance claim by arguing that Wireless and Holdco are improperly denying liability as TCCC's successors.

## II. The Breach of Contract Claim, Premised on Allegations of Successor Liability, Should be Dismissed

Plaintiff's Memorandum in Opposition confirms that his basis for purporting to hold Wireless liable under the Partnership Agreement here – which Wireless did not sign – is the allegation of successor liability which, in turn, is dependent on the sufficiency of Plaintiff's fraudulent conveyance allegations. (Opp. Mem. 17-19) Put another way, there is no remaining basis in this case to hold Wireless liable as a successor to TCCC, other than the allegation of fraudulent conveyance. Accordingly, and for the reasons set forth in the opening brief by Wireless (*see* Wireless Mem. 15-16), Plaintiff's failure to allege fraudulent conveyance disables any successor liability claim he might purport to have, and his claim for breach of the Partnership Agreement should once again be dismissed as to Wireless.[2]

## III. The New York Labor Law Claim Should be Dismissed

Plaintiff concedes in his opposition papers that any liability on the part of Wireless for violations of New York Labor Law ("NYLL") is premised on Plaintiff's theory of successor liability. (Opp. Mem. 21). Because Plaintiff has failed to state a claim against Wireless for fraudulent conveyance and accordingly has failed to establish that Wireless has incurred successor liability on the basis of the fraudulent conveyance exception (or any other exception) (*see supra* Points I and II), Plaintiff's claim against Wireless for violations of NYLL must also fail.

Plaintiff also alleges that it is improper for Wireless to raise certain arguments on this motion in defense to Plaintiff's NYLL claim. However, Plaintiff did not articulate a theory of

---

[2] Plaintiff appears to attempt at times to argue that Wireless should be held liable as the "mere continuation" of TCCC. *See, e.g.,* Opp. Mem. 8 (citing "mere continuation" exception). However, assuming that this argument is properly within the scope of the leave to amend granted by the Court, the argument fails because Plaintiff cannot demonstrate that TCCC, the implied predecessor, has ceased to be an operating and viable business. (*See* Wireless Mem. 16.)

9

successor liability as the basis of Wireless's liability under the Partnership Agreement until his memorandum in opposition to Wireless's first motion to dismiss, prior to which the Wireless had premised its defenses on Plaintiff's veil-piercing theory. Because Wireless did not have the opportunity on its prior motion to evaluate its liability under the NYLL under the same legal theories as the instant motion, it is submitted there is nothing improper in the timing of any of Wireless's defenses.

## CONCLUSION

For the reasons set forth here, in Wireless's opening Memorandum of Law, and in the other papers submitted by all defendants on the pending motions, Defendant TCC Wireless, LLC respectfully requests that the Court dismiss with prejudice all remaining Causes of Action as against it, and that the Court strike Plaintiff's demand for punitive damages and attorney's fees.

DATED: New York, New York
June 3, 2016

SATTERLEE STEPHENS BURKE & BURKE LLP

By: */s/ Richard C. Schoenstein*
Richard C. Schoenstein
230 Park Avenue
New York, New York 10169-0079
Tel: (212) 818-9200
Fax: (212) 818-9606 1010
Email: rschoenstein@ssbb.com

*Attorneys for Defendant TCC Wireless, LLC*

10